All rise. Here's the jury's decision. The Honorable Eric Falk for the 2nd Provincial District is now open for a suit in turn. The Honorable Anthony Jorgensen, if you'd like him. Please be seated. Your Honor, this case on the docket, 2-16-0713. Time to have Nielson and David A. Nielson present at the loonies. A Swedish American Hospital Corporation Defendant, Contemporary Appellant, and M.J. Busch, M.D. Defendant. Gentlemen, on behalf of the Appellant, Mr. David B. Falk. And on behalf of the Appellant, Mr. Gregory B. Falk. Are you both ready to proceed? We are, Your Honor. You may proceed when you're ready. Good morning, Your Honors. I am here on behalf of Swedish American Hospital asking that this Court find that three QCRs, Quality Control Reports, prepared by three nurses at Swedish American Hospital, are privileged under the Medical Studies Act. I'm certain that you will have questions. But at least from my perspective, there were just four points that I wanted to make. Point number one is, I believe that the record is fairly clear that this is material that is, under the words of the statute, of the committee. And I say that because the record establishes and the trial court found that there was a clear request that when certain categories of information occurred, that information being provided to the Quality Assurance Committee, that directive came from them in establishing those categories. The trial court found that the nurses were designees under the statute as amended in 1995. And the trial court found that the documents here owe their very existence to the QA process. These findings that you're talking about, when we talk about the standard of review, you're saying it's a de novo standard of review across the board, correct? No, we are not, Your Honor. The standard of review, as you have set forth in numerous cases, and virtually all the Medical Studies Act cases have, and as this Court set forth in Anderson, pretty much says that the application of the legal aspect of a privilege is a de novo question for you to review. But within that question of the applicability of the privilege, there are factual determinations, which are judged against the manifest weight of the evidence. And that's found at 385, the left third, at 174 in your second district opinion in Anderson. So what you were just talking about were the factual determinations of the trial court? Yes, Your Honor. And I think this case very simply boils down to the trial court took the position that while it found that all these factual things were there, and the trial court, I think, indicated in their memorandum opinion that absent case law commentary, that the court would find that these are within the statute, that what the court ran into was the statements in the case law that for the privilege to attach, that the committee had to have already initiated and begun a review of this specific incident. And I think that's the legal problem that the trial court ran into. And on that issue, Your Honor, whether or not the Medical Studies Act requires that the committee actually have started a specific review of this specific case before any privilege can attach, I think that's the only real issue here, and I think that would be de novo. But the first point I was trying to make is that this is of the committee because to say that it owes their existence to a QA process and to the committee virtually is tantamount to saying it is of the committee. Are these reports used for other things in the ordinary course of hospital business other than peer review? Well, you have two types of QCRs. You have the QCRs which are medical in nature that go to the QA committee and are sent to the risk manager in their capacity as a member of those QA committees. You have non-medical QCRs that would go to her in her capacity as the administrator of the SIR. That's all laid out on the QCR form. Is it possible that, for example, a medical QCR might have another use or might be looked at for some other purpose? If you look at the policy and procedure, it says, for example, it might be legal counsel may look at that. There are times where that would have to occur. Credentialing actions to try and protect the confidentiality and the privilege. So there are times where you would have indication where it might also have another purpose. But the case law is very clear that if it is information of the committee, the fact that it is used for a different purpose does not remit the privilege. I know Anderson says that. There are several cases that say that, Your Honor. Certainly Anderson does. As does Ardisoni, as does Pietro, as does Webb, as does Socosco and Anderson. Webb also says, though, that if something is used for rendering legal opinions, weighing potential liability, corrective action by hospital staff, those reports aren't covered. And the policy manual here seems to indicate that all those things, these reports are used for all these things. I think you have to look at the two channels of the reports. Many of the things that talk about multi-purposes are talking about the non-medical QAs, excuse me, the non-medical QCRs. And it's almost as if you have two reports here. You have the QCR that is for a medical category that begins with the risk manager in her capacity as a QA committee and the other reports, which are non-medical, which go to her in her capacity as the administrator of the SIR. But then all of those reports, based upon the way you're interpreting the bylaws or based upon the way the bylaws are written, are really precluding any of those reports from being released. Isn't that a little broad? A little broader than the Medical Studies Act intended? No, Your Honor, I don't believe that it is broad and broader than what the Medical Studies Act intended. The reason I say this is, first of all, they deal with the medical categories. And I think if you look at the medical categories that are set forth, they all make sense from a medical standpoint. Now, is there some breadth to them? I will acknowledge that there is. But I will tell you that there should be some good breadth to that privilege. If you're looking at a hospital and you're basically saying that we want the QA program to monitor the care that's being delivered, that will reach into many corners of the hospital. In fact, it would be an ineffective QA program to not reach into those corners. Counsel, let me ask you this. What would not be covered? Give me an example of a report that would not be covered under your theory. What I did is I went back through the cases, the Medical Studies Act cases, which talked about when the Medical Studies Act was held not to apply. And virtually all of those cases, the holding would not change if you were to find that these three QCRs were protected under the Medical Studies Act. See, but here was my question. What under your interpretation of your bylaws and your of the committee would not be covered under your interpretation? The hallway conversations with the CRNA and the nursing supervisor and Roche would not be privileged under our interpretation. The letter from the physician to the OB chair in Berry where there was no evidence that was requested would not be changed. Isn't this case just like Roche? No, it is not like Roche. Why is it not like Roche? How do you distinguish Roche from your case? Roche specifically says that there was not a request coming from a committee for the information. And in our case, we do have a clear documentation that this committee met. We provided you with the 1999 minutes from the QIA committee. Right, but they didn't meet from the time of the event to when these reports were created. That is correct. So if you take that position, then pretty much every report is going to be of the committee. Every document that's created as a result of an event in the hospital is going to be covered. Your Honor, that would not be the case. We're talking about the QCRs that are requested in the medical category. You would not touch the hallway conversations in Roche. You would not touch the letters from the physician to the OB chair in Berry. You would not touch the incident reports in Chicago Trust. You would not touch the slip and fall report in Durkin, which was non-medical. You would not touch the administrator conversations with the patient's wife and about to become a defendant doctor in Brandy, where they said there was no authorization or request by a committee. You would not touch the complaint memo that went to the board and presumably the QIA in Kapaulovic. You would not touch the two statements requested by the hospital administrator in Pietro. All those things that you're listing initiated the review. And what you're saying here is this incident in 2012 or whatever, the review was actually initiated in 1999. What we're saying is that the review was initiated when the QCR was prepared. And that was pursuant to a request of the committee. You have, back in 1999, you had the committee formally adopt medical categories that made sense to review. They educated their people. The form itself says this is a request by the QIA committee. You have affidavits that are undisputed from the nurses that completed them that said they were understanding that they were preparing them at the request of the committee. And it seems that that is a much more efficient process to identify what needs to be in QCR in advance to identify those committees than it is to try and, on an ad hoc basis, request that authority. Isn't this the same thing that the Chicago Trust precluded? No. In Berry, in Chicago Trust, in Grandi and Pietro, all those cases had specific language that there was no evidence of a request from the committee. None. So your evidence of a request is a bylaw that was passed in 1999? In essence, the committee minutes that established and adopted the form, yes, Your Honor, and set forth the... So regardless of what happens, as long as you fill it out on this form, it's sua sponte, covered, under the Act? It is covered if it is within a medical category. It is not covered if there are none. But, counsel, come on. Your medical categories pretty much covers everything that could possibly happen in a hospital. Your Honor, there are many non-medical categories that are set forth, and I will acknowledge that it has some great breadth to it. But I would argue it should. The quality assurance at the hospital is trying to cover medical care that's rendered at the hospital. When you stop to think about it, that's a lot of what they do. So there should be a significant breadth there. If you had very, very narrow categories, I tell you, you'd have someone saying you have an ineffective or incomplete or poor quality assurance program. And I think if you look at the categories while they are broad and they have some breadth to them, they all make sense. They're all the kinds of things that relate to medical care. And that's what the committee determined, and they made that request. You're talking about quality assurance. And here we have a situation where you're arguing that every QCR, when it's prepared, is privileged, whether or not the peer review committee looks at it ever at all. If it's a medical category, it would be privileged. You have an affidavit from the risk manager, Beverly Merfeld, which shows that each QCR that is prepared actually is reviewed by the committee in either its raw or statistical form. If you look at the QCRs here, you will see the two of them were in their raw form and reviewed by Dr. Born. That's at the bottom of the QCRs. So all the information is reviewed. And I think the concern is, I suspect when I read the cases, when I hear the questions, is that there will be an abuse of the privilege. And I have explained, I mean, when I teach my associates, I tell them the idea behind the Medical Studies Act is you don't want an evidence-disappearing machine. And by that I mean you don't want a defense attorney to sit down and say, I've got six pieces of evidence, one through three I like, items four, five, and six I don't like, so I'll just ship them off to the QA committee. And I think that's what Roach talks about, is the mere furnishing of earlier acquired information. But that is not what is happening here. These very documents the court has found... Don't the bylaws say that the defense attorney in a MedMal case, in defending a MedMal case, is entitled to this information? But he doesn't have to turn it over because under your scenario it's privileged. So isn't he picking out discovery that he likes and that he doesn't like and he doesn't have to turn it over? He's not shielding that. And I can't wait. There have been times I've had cases where I've seen a QCR I'd like to have into evidence, but I can't because it's privileged under the Medical Studies Act. And I don't doubt, what you're basically asking is are you gaining an unfair advantage in the truth-seeking process? Well, privileges by their nature put some hindrance on the truth-seeking process. When I take the deposition of a plaintiff, I would be very happy and probably do a much better job if instead of deposing them two and a half or three years after the fact, I had access to the letter he or she wrote to their attorney a month after the event. This is not attorney-client privilege. This is an entirely different proposition. It was created by a committee five years before the event occurred. So attorney-client is just very, very different. Judge, how is it different? It's privilege. And the attorney-client privilege shields information. If a plaintiff that I'm trying to depose speaks to their wife about something a day after the event, I can't get at that. But what you're doing here, counsel, what your bylaws are doing are precluding the prosecution of a medical malpractice case. That's a little different than saying something to the lawyer in an attorney-client privilege than saying, Hey, forget about it. What we're going to do is we're going to say, we're going to enact a bylaw that says anything sent to us is shielded, and that's your work. It's shielded. Therefore, we don't have to turn it over. Therefore, somebody's going to be at a real disadvantage in prosecuting one of our doctors that committed a potential malpractice. I would say in response to two things, if I may finish with the time, I apologize. Number one, you do have access to the medical records, to all depositions, to every witness to the event, and if they completed a QCR, you were able to depose them about their recollections. You do have a full access. The second thing I think you're asking, the second point I want to make is I think you're asking about abuse and an unfairness. This is not abuse. I always kind of look for a piece of evidence that lets you know, speaks to you sometimes without a spin, without talking to you. If you look at the record, Privilege Law 174 to 175, that's where this particular case is discussed in the minutes by the committee. And if you look at the other material that's in that in-camera submission, you see that you have four new events. This is one. The other three being reviewed, all triggered, you'll see right at the top, QCR. And that is one committee that meets monthly or bimonthly, I forget the intervals, of one department. These QCRs are a legitimate tool that are used for review of medical care. And I think sometimes we get a little bit lost where we as litigants, because it's the system that we function into. I mean, I don't know what percentage of cases where there's a delivery of care result in a suit, but I bet it's a small, small percentage. I bet it is, too. And we've got a good QA program for the sake of that .003%. And the legislature has basically made that determination. Correct. Wouldn't it be just as easy for the hospital to amend their bylaws to reflect the legislation since in this way you are going at it in the correct way? Judge, what do you mean by reflect the legislation? I believe it does comply with the statute. You don't think it's a little broad, as the judge said? Or as the case law points out? I don't think it is unduly broad. It deals with medical issues. If you look at the statutory language, it talks about all information, all data of the committee. And a good QA program should have some decent breadth to it. And I don't think anybody can look at those categories and say that they're not the kinds of things we would want to review. Thank you. You have a chance to reply. Okay. May it please the Court, Counsel, this is Bob. I just wanted to point out a couple of facts. I know the Court is familiar with the facts, but I think these are kind of critical here because to me this case represents a step beyond what we've even seen in the cases like the Roach case or like Chicago Trust or even like this Court's recent case, or the Berry case or even the Lindsay case, which is very recent. This looks to me like a very big leap beyond that. These QCRs were prepared in December of 2013. Yet the committee request, which is put forward here, occurred in a couple of committee minutes that occurred in 1999. So we are in 1999 reaching forward. Respectfully, I think we've cleared that up. We're very well aware of the time lapse there. I think, Counsel, what's different here is that you don't just have somebody reporting something. You have this bylaw or actually the committee that is having basically a standing order that not just when anything happens, but when a clearly defined medical incident happens, then this QCR is created and it goes along this particular path to the QCR committee. That's what Counsel's argument is. It's different than just a general letter to somebody saying, hey, I saw something bad happen. Why can't the hospital do this? Well, first of all, if you look at the way I read the cases, Roche, Chicago Trust for two of them, the idea that before the committee, if you will, the actual committee, the Q&A, the quality control committee has any knowledge that there has even been an incident because this goes in time backwards 15 years at least in this case. This has already been requested, if you will, by that committee. I don't think you can do that. If you look at the policy itself which deals with these QCRs, which is a policy entitled incident reporting, these are incident reports. These are occurrence reports. These are reports of witnesses, not investigators. For instance, in the Berry case, if I recall correctly, there was a system in which the chairman of quality control, they said they met once or twice a week and they would specifically designate the risk manager to investigate and get facts, go out and interview witnesses, get facts and bring them back to determine whether or not there might be a committee process that would be warranted in that particular case. Here we don't have that. We don't have a situation in which somebody has made a determination after the incident has occurred that there might be or could be a quality control issue and then designated someone to go out and do an investigation. Obviously the risk manager is not going to be a witness to anything. Let me ask you this. Mr. Faulkner said so what? You're getting the medical reports. Isn't that enough? I'm mostly a plaintiff's lawyer so I get skeptical when people say I can't have things, particularly which contain facts. I don't and wouldn't be entitled to have information which deals with opinions that a legal counsel may have rendered on the subject. These are nurses' reports. You can depose the nurse, present the nurse at trial, ask he or she any questions you want. Why isn't that enough given the policy and overriding purposes of the Medical Studies Act? I believe that under Roche and Chicago Trust you're entitled to get anything that a witness has said by way of facts before you What would the correct bylaw be or what would the wording of the bylaw be to be in compliance with respect to the legislation in the Medical Studies Act? I don't think for one thing you can enact a bylaw or a committee minutes 15 years ago and designate everybody and here they're saying that under the designating that visitors to the hospital and students there and there's a big long list they're all designees of a quality control committee? Are you kidding? It's about everybody except people driving by on the street. That's disingenuous. So I think you would have to to comply with the Medical Studies Act I think that the quality control process would have to begin with wiping and then I'm trying to remember the name of the case It's the first district case I'll get it The IUD case where the committee is meeting at least according to the facts I have the committee is meeting once or twice a week that's quite a bit and in the process of doing that, determining those instances or those occurrences where there could be a committee process that might be necessary and then they designate specifically designate a person to go out and do an investigation interview the witnesses get the medical records or whatever it might be and bring that back I think that's the kind of bylaw or minute or whatever you want to call it One of the things that council did raise is that it is best to get those reports done within a day or two or three after the event rather than the committee meets a month later and then seeks out the three nurses to record their recollections Isn't it a better report done two to three days after or the same day? I would say that's probably correct but that doesn't transform those witnesses who record the facts that they've seen or statements they've heard automatically somehow just because they could be useful in a variety of contexts that they were obtained within a day or two of the event Does it make it better then if this committee just meets every day at 4.30 reviews the day's activities and says we want to talk to those three nurses and get them a report Does that make it better? Or is it the absence of the committee actually meeting because if we look at it that way the bylaws basically do what a committee could do if it met every day at 4 o'clock or whatever Under IDE you might be able to make that argument because they were meeting twice a week or whatever But the point is, under Roche even under Chicago Trust and whatever else it says there must be an awareness of the incident Right, that's my point. If every day they met and somebody reports everything that happened today and they decide we're going to investigate this or we're not going to investigate That's a good question That may not even do it Because? Because the facts that are given even if they're one hour or one month or one year do not occur before an awareness say the reporting of the facts Okay, let me make this crystal clear An event happens at 9 o'clock, the committee finds out at 4 and asks for an investigation Wouldn't that then be covered? I think it probably would My question is, what's the difference between three people sitting in a room being a committee and being made aware versus a standing order through a bylaw or some other agency There's a huge difference just because the case law says the committee's got to be aware So it's awareness You think it's awareness I don't mean to... Which is this court's case I think even the Lindsay case I think even though the court upheld the privilege in the Ide case which is similar to what Your Honor is talking about  as you suggest, but twice a week I complied basically with the Medical Studies Act and that there was awareness at the time Correct, I have no problem with the Ide case I think it's consistent with what we're arguing I would say because there was one specific designee and here we've argued and got into that but everybody is a designee here Everybody is a designee Everybody is a designee on specific incidents We have a situation where this group meets in 1999 and says we are going to investigate every time outpatient surgery results in an admission So we're going to say if you see something like that happen give me a QCR because we will investigate that They can't do that? No, you have to change the case law Because of Chicago Trust and because of Kapolovic and several cases that don't talk about the designee amendment Didn't that change the paradigm at all? Well, I think that in 1999 to say that or whatever way in advance that broad categories of people in the hospital are all designees It goes too far To me, you can't make a designee until you know about the incident and then you can designate someone rather than everybody under the sun You have a broad group of designees who are authorized to report on a specific incident and we'll just focus on outpatient surgery that results in admission So if you happen to be a janitor and you stumble across an outpatient I suppose you have to write a QCR which doesn't make a lot of sense but I'm just saying counsel will argue that it's funneled down not just this group of people to that particular incident that we as a group have said we will investigate that no matter what We will investigate that incident Well, I still think that runs afoul of the need or the law that says that the committee the specific committee investigating needs to be aware before you start shielding facts that have been ultimately coming to the committee In this instance, if you read the policy creating these QCRs there's a broad category of reasons that are listed of what they're used for They're used for risk management reviews and they're supposed to be sent to the risk management department It doesn't say on behalf of the quality control department It says they're sent to the risk management department They review and conduct an investigation for follow-up They serve as a report to legal counsel for defense of a later claim They could be used by billing to decide, well, we won't bill this patient because of this particular outcome They're used by the CMO, Chief Medical Officer Chief Quality Officer reviewing and determining if or if not there will be a root cause analysis which, as we know, root cause analysis is a quality assurance Are those purposes applied to all QCRs under the policy? Yes. Not just MedLine That's the way I read it So, I think Chicago Trust, for one thing says about incident reports and these are incident reports because there are witnesses filling out facts that you can't designate in advance That was the problem You can't designate in advance So the 1995 post Roche doesn't mean, doesn't it? It swallows up the rule like Roche does This would swallow up the rule And yeah, I can take depositions I can get all the medical records and so forth and so on But the QCRs themselves, which are witnesses The way I read it, the three nurses that fill these out were witnesses for some reason We don't have one from the doctor If you read that policy, she should have filled one out But be that as it may, these nurses filled out a description of facts This is not an investigation document where someone's going out and getting statements and reporting back as to what Nurse A and Nurse B said or what this person or that person said or what occurred at the time of the incident So I would ask the court to affirm Judge Daugherty Do you have any position with respect to the contempt finding, Pablo? I think that the appeal was absolutely in good faith So if the court were to affirm Judge Daugherty's ruling I think that the contempt finding should be vacated Thank you Thank you Thank you I'd be glad to answer questions but I also just have a couple points on my list Number one, what we're asking the court to do here is much like the 1st District did in Ide What happened in Ide is the 1st District had cases that said before any privilege can attach you've got to have the whole committee meeting and at least language that suggested that and they have to have looked at the specific incident But what happened in Ide is the court said you know, we have a different circumstance here and in a different circumstance this gloss that was not expressly provided in Roach which we had in our earlier cases, doesn't quite fit and so in Ide, for example, they said that the committee as a whole didn't need to meet it was okay to have the individual and also in Ide, they noted that here we have a clear request much as we have in our case We're asking you to do the same thing here and I think Judge Daugherty is doing that On the Flannery case that recently came out from this court I think that like I said, these cases that adhere to this chronological rule either don't consider the designing language or don't encounter facts that are different. Flannery is a case where if you look back, there still is not a clear request from a committee in the Flannery case I know it wasn't a hospital, it was long-term care but if you look back carefully through the affidavits they say that the material, that there were protocols about reporting, but it doesn't say those protocols came from the committee it says the committee reviewed it, but it didn't say they requested it so the Flannery case does not change the basic analysis in Ide. Second thing, you've asked a lot of questions about designation. The court found as a factual matter that these nurses were designees under the statute. The people who are reporting are only those who observed the incidents to give you possibly some comfort or example I was trying to think of some kind of analogy under the DCFS reporting statute designated reporters. What do we do? Now remember, that statute imposes an obligation to report. It also establishes a privilege. It has breaths like, who does it apply to? Who's designated? Personnel engaged in examination, care and treatment of persons very broad. School personnel very broad. Is the purpose of the DCFS statute a little different than preserving records? I guess our purpose with QA is not to preserve records. Well, you're talking about three pieces of paper. DCFS talking about the welfare of a child. What I'm trying to say is, you're saying, hey hospital, your designation is pretty darn broad and what I'm saying is, there should be some breadth to it and in fact, the law has recognized broad designations when they make sense. This is an example of it. They should do so here. Finally, the questions seem to be establishing to me a distinction without a difference. It seems that there has been some acceptance that if we have a situation where I'm a person at the hospital, I have certain information. Under EAD, I go to a committee member and they say, do a report and investigation and I do that. But that seems to be okay. If you go to the committee member and you make a report, that report itself is not privileged. But then if the committee member says, hey go check it out for the committee. I think your investigation is privileged. I imagine you have a simple request that this is what I've got. John That's basically, you have a difference between an incident report and an investigation report. These QCRs seem to be incident reports, factual incident reports or at least that's what the argument is as opposed to the committee saying, we want you to go out and investigate this particular incident that we're aware of. They have, they are evaluated even though they have facts in them, any good investigation does. In fact, the Medical Studies Act has all I'm trying to say is, is there really any difference between me calling up a committee member and then preparing the same investigation in situation A where I'm the same person over here, same circumstance but I know that the committee has already told me How do you know? How do you know that? They know that because you have it in the affidavits. They know it from the information that's sent How do you know the committee wants to know? Counsel, excuse me How do you know, when you're standing on that side of your example, how do you know that the committee wants it? You haven't asked them and they are not aware of it and have not previously asked you to do it. Because they have placed a standing order that when I encounter a specific category, that I should report. And to me, them saying, yeah go ahead or in advance saying, I have this category that I want to report, that's a distinction without difference. Isn't the standing order the whole issue here? In some ways, I imagine it is It's a key fact, yes. And I guess I would close with simply the idea that this is a privilege that was established by the legislature We in litigation seem to get so focused on our litigated cases. These QCRs you can see from the record are used extensively to achieve a lot of group QA and that confidentiality as Judge Dougherty said is important. It would be a shame to gut a good QA program out of the concerns here. What's best is to do as was done in Ede. Recognize this as a different situation. It makes sense. It falls within the statute. Thank you. We will be in recess until the next case at 1030.